IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JEFFRY IRVING, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Case No. 1:16cv1617 |
| | ) | |
| PAE GOVERNMENT SERVICES, | ) | |
| INC., et al, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Jeffry Irving is a Virginia resident who sued his former employer, PAE Government Services, Inc. ("PAE"), a California corporation, and four of PAE's employees, alleging three causes of action: (i) retaliation for engaging in statutorily protected activity as defined by § 3730(h)(1) of the False Claims Act ("FCA"), (ii) violation of 42 U.S.C. § 1983 for discharging the plaintiff in retaliation for plaintiff exercising his constitutional right to free speech, and (iii) breach of an oral contract purportedly entered into on October 19, 2015.[1] At issue on this threshold partial motion to dismiss are the following potentially dispositive questions:

> (i) does the FCA's retaliation provision permit a plaintiff to sue individual employees of the corporate employer, or is relief under the FCA's retaliation provision limited to the plaintiff's actual employer;
>
> (ii) does a private company that contracts with the State Department to provide security services domestically and internationally act under color of state law when it discharges an employee; and
>
> (iii) has plaintiff pleaded sufficient facts to demonstrate that (a) PAE entered into a binding oral contract on October 19, 2015, rather than an unenforceable agreement to agree, and (b) has plaintiff pleaded sufficient facts to demonstrate that defendant Easley intended to bind himself personally to the oral agreement purportedly reached on October 19, 2015.

---

[1] Plaintiff's first two causes of action are against all of the defendants; but his third cause of action for breach of contract is only against PAE and Stephen Easley, a director of PAE.

Plaintiff is a former employee of PAE, a California corporation that provides goods and support services to the United States government domestically and abroad. Defendant Richard Greene ("Greene") is a Virginia resident who served as PAE's President of Global Logistics and Stability Operations. Defendant Janice Pfundheller ("Pfundheller"), a resident of the State of Washington, served as PAE's Vice President of Governance and Institutional Development. Defendant Kathleen Long ("Long"), a Virginia resident, was PAE's Director of Human Resources. And finally, defendant Stephen Easley ("Easley"), a Virginia resident, was a PAE Director responsible for implementing PAE's programs.

Plaintiff worked as PAE's Deputy Program Manager and Chief of Security in Kabul, Afghanistan where he was responsible for, among other things, protecting State Department employees and other government assets. During the course of his employment with PAE, he allegedly complained six or more times to other senior-level employees at PAE (i) that PAE was fraudulently billing the State Department for more hours than its staff actually worked; (ii) that PAE procured inferior or non-compliant goods in breach of its contract with the State Department; (iii) that PAE failed to acquire and issue the proper type and number of weapons to its employees, in violation of its contract with the State Department; (iv) that PAE procured and used noncompliant body armor; (v) that PAE failed to follow mail handling laws and protocols; and (vi) that PAE misused government furnished equipment to conduct black market activity.

---

[2] The facts recited here are appropriately derived from the plaintiff's complaint, as settled precedent dictates that when reviewing a 12(b)(6) motion courts "'must accept as true all of the factual allegations contained in the complaint,' drawing 'all reasonable inferences' in the non-moving party's favor". *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), as amended (Jan. 20, 2017) (quoting *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

After raising these concerns to PAE and State Department officials, plaintiff was formally terminated on October 20, 2015.

Plaintiff alleges that on October 19, 2015, he met with Easley to discuss the terms of his discharge. At this meeting, plaintiff claims that Easley offered plaintiff his "normal salary (base salary with the additional 70% plus ups) and performance bonus through December 31, 2015 to complete [plaintiff]'s employment contract, [paid time off] and benefits (life [and] medical insurance) and positive professional referrals." The purported cash value of this offer was $85,615.00 in addition to insurance benefits. Plaintiff claims he required Easley to repeat the terms of the agreement twice to ensure that plaintiff fully understood the offer. Following this, plaintiff purportedly accepted the oral offer. The next day, however, plaintiff claims he was presented with a written contract that differed substantially from what he claims to have been previously promised. Specifically, the written contract offered plaintiff no more than $11,205.00 in cash compensation.

In response to his termination, plaintiff filed this three-count complaint on December 30, 2016, alleging (i) that PAE and the individual defendants discharged him in retaliation for reporting alleged violations of the FCA, (ii) that PAE and the individual defendants discharged him for exercising his First Amendment rights, in violation of 42 U.S.C. § 1983, and (iii) that PAE and Easley breached the oral agreement that plaintiff, Easley and PAE reached on October 19, 2015.

Defendants have now filed their partial motion to dismiss, which argues: (i) that Count One should be dismissed against the individual defendants because the FCA's retaliation provision provides a cause of action only against a plaintiff's employer, not against the employer's individual employees; (ii) that Count Two should be dismissed because in

3

discharging plaintiff none of the defendants acted under color of state law; and (iii) that Count Three should be dismissed against PAE because plaintiff has failed to allege that an oral contract was reached on October 19, 2015, and against Easley, in his individual capacity, because plaintiff has failed to allege facts to support an inference that Easley, as an individual, intended to be a party to the contract and intended to assume personal liability for paying plaintiff's termination benefits.

## II.

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., tests "the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), as amended (Jan. 20, 2017) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). A plaintiff's claims should be dismissed under Rule 12 unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a 12(b)(6) motion, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## III.

### A.

To begin with, defendants argue that plaintiff's FCA retaliation claim against the individual defendants must be dismissed because liability under the FCA extends to only the plaintiff's employer, not to individual supervisors or co-workers of the employee. In opposition, plaintiff asserts that, following the 2009 Amendment to 31 U.S.C. § 3730(h), defendants Easley, Greene, Pfundheller and Long may be held liable, in their individual, supervisory capacities, for retaliating against him in violation of the FCA. For the reasons that follow, the defendants are

4

correct: the FCA, both before and after the 2009 Amendment, does not permit a plaintiff to sue individual employees of the corporate employer for retaliation.

The FCA's whistleblower provision, as amended in 2009, currently provides that:

> *Any employee, contractor, or agent* shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1) (emphasis added). In comparison, the pre-2009 version of the FCA's whistleblower provision stated:

> Any *employee* who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment *by his employer* because of any lawful acts done by the employee on behalf of the employer or others in furtherance of an action under this section ... shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (2003) (emphasis added). Thus, the 2009 Amendment expanded the universe of individuals who could sue under the FCA's retaliation provision from an "employee" to an "employee, contractor, or agent" and eliminated the reference to "employer." The 2009 Amendment did not, however, expand the universe of individuals a corporate employee could sue for retaliation to include the plaintiff's co-workers and supervisors.

Plaintiff argues that Congress's decision to expand the universe of individuals who may be entitled to relief under the FCA's whistleblower provision from "employee[s]" to "employees, contractors and agents" necessarily broadened the universe of individuals who may be sued under the FCA's whistleblower provision. Plaintiff cites three district court cases in support of

his argument.[3]  For the reasons that follow, none of plaintiff's arguments or cited cases persuasively demonstrate that Congress intended for plaintiffs to be able to sue their fellow co-workers and supervisors under § 3730(h).

As always, the "task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters.*, Inc., 489 U.S. 235, 241 (1989).  The current version of § 3730(h) clearly authorizes employees, contractors and agents to sue if they are retaliated against for engaging in protected activity under the FCA.  Yet, the amended statute is clearly and significantly silent on the question of who may be sued pursuant to the FCA's whistleblower provision.  Plaintiff argues that because the 2009 Amendment to § 3730(h) eliminated the restrictive language "by his employer," employees, contractors and agents can now sue *anyone* who retaliated against them for whistleblowing.  This argument fails because it ignores the statutory text and is contrary to logic, the legislative history and the long history of the application of the FCA prior to the 2009 Amendment.

To begin with, there is no textual basis in § 3730(h), as amended, for allowing plaintiffs to sue individual employees of a corporate employer.  It is therefore not surprising that no controlling circuit decision has held that such a right to sue individual employees of a corporate employer exists. This is so because, as a matter of logic, it does not follow that the addition of the phrase "any employee, contractor, or agent" (which expanded the universe of potential plaintiffs) and the omission of the phrase "by his employer" operated to expand the universe of individuals who can be sued under the FCA from "employers" to individual officers, directors,

---

[3] *Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd.*, No. 3:15CV72, 2015 WL 4937461, at *1 (E.D. Va. Aug. 18, 2015); *Huang v. Rector & Visitors of Univ. of Virginia*, 896 F. Supp. 2d 524 (W.D. Va. 2012); and *U.S. ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09CV1127 JBA, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012).

supervisors, and employees of a corporate employer. To the contrary, there is a good reason for Congress's omission of the phrase "by his employer" from the amended version of § 3730(h) that has nothing to do with expanding the universe of potential defendants to include a corporate employer's employees. Specifically, by omitting the phrase "by his employer," Congress simply meant to recognize the fact that agents and contractors, which were added to the class of potential plaintiffs in 2009, are not entities controlled or directed by an "employer." Accordingly, the omission of the phrase "by his employer" was a grammatical necessity, not a substantive revision. To put this point differently, Congress omitted the phrase "by his employer" from the current version of § 3730(h), not for the purpose of permitting a plaintiff to sue his fellow employees and supervisors, but to ensure that an agent can bring an FCA action against his principal and a contractor can bring an FCA action against the entity with whom the contractor contracted. In sum and simply put, nothing in the amended statute's text or purpose permits a corporate employee to sue his individual supervisors or co-workers for retaliation.

This construction of the plain text is also supported by the legislative history of the 2009 Amendment, which reflects that the Amendment was drafted and passed by Congress, in part, to remedy fraud and abuse arising out of the conflicts in Iraq and Afghanistan. *See* H.R. Rep. No. 111-97 (2009); S. Rep. No. 110–507, 110th Cong., 2nd Session (Sept. 25, 2008), 2008 WL 4415147. Specifically, Congress recognized that to perform essential government functions in Iraq and Afghanistan, the federal government found it increasingly necessary to rely on the use of independent contractors, who in turn, often hired subcontractors and agents to perform necessary governmental tasks. *Id.* To accommodate this reality, Congress expanded the FCA's whistleblower protections to include agents and independent contractors to ensure that all individuals in these categories who witnessed fraud against the government could bring FCA

claims.[4]  *Id.*  Notably, however, the legislative history includes no reference to, nor any discussion of, expanding the class of potential defendants under § 3730(h) to include a corporation's directors or employees, and consistent with this, the House and Senate Reports are wholly silent as to any policy reason for doing so. *Id.*

It is also important to note that before 2009 the plain language of § 3730(h) explicitly limited liability to a plaintiff's employer, and courts appropriately and uniformly recognized that only employers, not individual corporate employees, could be sued under the FCA's whistleblower provision. *See, e.g., United States, ex rel. Golden v. Arkansas Game & Fish Commission,* 333 F.3d 867, 871 (8th Cir. 2003), cert. denied, 124 S.Ct. 1069 (2004); *United States, ex rel. Siewick v. Jamieson Science and Engineering, Inc.,* 322 F.3d 738, 740 (D.C. Cir. 2003).  Had Congress intended to overrule this long, consistent line of cases and to expand the universe of potential retaliation defendants to include a corporate employer's employees, it is reasonable to assume that Congress would have addressed this major change in both the text of the statute and the legislative history.  Congress did neither.  Accordingly, it is proper to assume that Congress endorsed the preservation of existing case law, namely that supervisors and co-

---

[4] The Senate Report cogently summarizes the purpose behind the 2009 Amendment to 3730(h):

> [T]he Third and Fourth Circuits have held that an independent contractor is not protected under section 3730(h). To correct this loophole, section 5 clarifies section 3730(h) by simply including the terms "government contractor, or agent" in addition to the term "employee." The Committee believes that it is necessary to include these additional terms to assist individuals who are not technically employees within the typical employer-employee relationship, but nonetheless have a contractual or agent relationship with an employer. The Committee believes this is a vitally important clarification that respects the spirit and intent of the 1986 Amendments while offering whistleblower protections to contractors and agents who may come across fraud against the Government and report it under the FCA.

S. Rep. 110-507, at 26-27.

workers are not liable under § 3730(h)'s remedial scheme. *See United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) ("Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute."); *Howell v. Town of Ball*, 827 F.3d 515, 530 (5th Cir. 2016), cert. denied sub nom. *Town of Ball, La. v. Howell*, 137 S. Ct. 815 (2017) ("Adopting [plaintiff's] argument [regarding the 2009 Amendment to § 3730(h)] means concluding that Congress overturned [established, contrary] precedent, not by the insertion of express language expanding liability, but only by mere implication.").

Consistent with this conclusion, Congress fashioned the FCA's remedial scheme to make clear that § 3730(h) can only be enforced against an employer or principal, not against an employee's co-workers or supervisors in their individual capacities. Thus, § 3730(h)(2) provides for reinstatement and back pay, both of which are remedies that cannot be provided by an individual supervisor or co-worker.[5] *See, e.g., Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997) ("[R]einstatement and back pay [are] remedies available only from an employer."). By including reinstatement and back pay as remedies, Congress signaled its intention to restrict the class of defendants that individuals or entities that possessed the authority to reinstate plaintiff or to pay the plaintiff back pay. Indeed, several other courts have noted that by including certain remedies that cannot be provided by a plaintiff's individual co-workers or supervisors, Congress intentionally limited the universe of individuals who can be sued under §

---

[5] 31 U.S.C. § 3730(h)(2) provides:

> Relief . . . shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

3730(h). *See, e.g., Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001) ("[A] mere supervisor could not possibly grant [remedies such as reinstatement] in his individual capacity."); *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 387 (S.D.N.Y. 2012) ("The same logic [in *Yesudian*, 270 F.3d at 972] remains sound even after the 2009 Amendment [because] interpreting amended section 3730(h) to provide for individual liability is inconsistent with the mandatory remedy of reinstatement."). Therefore, the type of relief authorized by the FCA is yet another clear signal from Congress that plaintiffs cannot invoke § 3730(h) to sue corporate employees in their individual capacities.

This conclusion is further buttressed by the clear weight of legal authority. In this regard, the United States Court of Appeals for the Fifth Circuit's recent decision in *Howell*, 827 F.3d at 530, is particularly instructive. In *Howell*, the plaintiff was a police officer for the town of Ball, Louisiana, who during the course of his employment learned that the mayor and several other local politicians, including the chief of police, had fraudulently obtained disaster recovery funds from the Federal Emergency Management Agency ("FEMA"). *Id.* at 520. The plaintiff reported his suspicions to the Federal Bureau of Investigations ("FBI") which led to the arrest and indictment of Ball's mayor and four other employees, including the chief of police. *Id.* Following these arrests, the plaintiff claimed that the new police chief harassed him and ultimately terminated his employment in retaliation for the plaintiff helping the FBI. *Id.* at 520– 21. In response, the plaintiff filed an FCA retaliation claim (amongst others) against the City of Ball, the former and current mayors, and four individual members of the Board of Aldermen. The district court, in ruling on several motions to dismiss and motions for summary judgment, dismissed plaintiff's FCA retaliation claim against the individual defendants, noting that liability

10

under § 3730(h) only extends to entities with preexisting employment, agency or contractual relationships with the plaintiff. The Fifth Circuit affirmed, holding that:

> Before the passage of the 2009 amendments, federal courts uniformly held that the FCA created a cause of action against only a plaintiff's employer. Adopting Howell's argument means concluding that Congress overturned this precedent, not by the insertion of express language expanding liability, but only by mere implication. We decline to accept such a forced argument regarding Congress's intent. Accordingly, the district court did not err in dismissing Howell's FCA claims against the individual defendants.

Id. at 530. Numerous other courts have reached the same conclusion.[6]

Finally, the few cases cited by the plaintiff are inapposite and unpersuasive. To begin with, the court in *Fitzsimmons* declined to address the issue of whether individual employees of a corporate employer can be sued under § 3730(h) and instead kicked the proverbial can down the road, deferring any ruling until the summary judgment stage. 2015 WL 4937461, at *6. Court

---

[6] It appears that *Howell* is the only reported circuit decision to address whether individual employees may be held liable for retaliation under § 3730(h). *See Howell*, 827 F.3d at 530 (5th Cir. 2016). But many district courts, some of which are not cited here, have answered this question by concluding that the 2009 Amendment to § 3730(h) did not expand the universe of potential defendants beyond entities that had some employment, agency or contractual relationship with the plaintiff. *See, e.g., Aryai*, 25 F. Supp. 3d at 387 ("The foregoing considerations taken together, i.e., that 1) Congress's expressed purpose in amending section 3730(h) was to expand the class of potential plaintiffs, 2) Congress was silent on the issue of the class of potential defendants, that is, on the issue of individual liability, and failed to substitute 'person' for 'employer,' and 3) Plaintiff's interpretation leads to an unavoidable contradiction within the statute, leads the Court to conclude that Congress deleted the relevant language not to provide for individual liability but as a grammatical necessity of expanding the statute's protections to cover a 'contractor' or 'agent' in addition to an 'employee.'"); *United States v. A Plus Physicians Billing Serv., Inc.*, No. 13 C 7733, 2015 WL 4978686, at *5 (N.D. Ill. Aug. 20, 2015) (same); *United States v. Kiewit Pac. Co.*, 41 F.Supp.3d 796, 813 (N.D.Cal.2014) (same); *Perez–Garcia v. Dominick*, No. 13 C 1357, 2014 WL 903114, at *5 (N.D. Ill. Mar. 7, 2014) (same); *Boegh v. EnergySolutions, Inc.*, No. 5:10-CV-00031-TBR, 2013 WL 7141237, at *5 (W.D. Ky. Dec. 17, 2013) (same) aff'd on other grounds *Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056 (6th Cir. 2014)); *Lipka v. Advantage Health Grp., Inc.*, No. 13–CV–2223, 2013 WL 5304013, at *12 (D. Kan. Sept. 20, 2013) (same); *Russo v. Broncor, Inc.*, 13–cv–348–JPG–DGW, 2013 WL 7158040, at *6 (S.D. Ill. July 24, 2013) (same); *U.S. ex rel. Abou–Hussein v. Sci. Applications Int'l Corp.*, No. 2:09–1858–RMG, 2012 WL 6892716, at *3 n.4 (D.S.C. May 3, 2012) (same), aff'd on other grounds, 475 F. App'x. 851 (4th Cir. 2012).

records reveal that shortly after the *Fitzsimmons* court entered its order on the defendants' motion to dismiss, the parties settled the matter, thereby negating the need for the court to decide whether § 3730(h) provides for individual liability. *Fitzsimmons*, 3:15-cv-00072 (E.D. Va. November 19, 2015) (Doc. 33).

Nor is the *Huang* court's consideration of this issue very helpful to the plaintiff, because the court specifically declined to make a definitive legal ruling on whether the FCA provides for individual liability at two different stages of the proceedings. First, the *Huang* court declined to address the issue of individual liability under the FCA's retaliation provision at the summary judgment stage, because the parties had not raised the issue in their briefing. *See Huang*, 896 F. Supp. 2d at 548, n. 16 ("In the absence of specific guidance from the United States Court of Appeals for the Fourth Circuit dictating that there can be no individual liability in FCA retaliation claims after the 2009 amendment, and because Defendants do not assert in their motion that Dr. Huang's FCA claims against them are legally impermissible, I will not dismiss those claims out of hand. Instead, I proceed to the ordinary summary judgment analysis."). And second, following a jury trial, the *Huang* court again declined to address whether the FCA provides for individual liability, finding that the issue had been waived and that the defendants' Rule 50(b) motion had to be denied on this procedural ground. *Huang*, 2013 WL 865845, at *4 (W.D. Va. Mar. 7, 2013) ("Because I find that Defendants have waived the argument that the FCA does not provide for individual liability, I need not decide that issue."). Therefore, none of the opinions issued by the *Huang* court constitute full-throated endorsements of the proposition that, as a matter of law, individual employees and supervisors can be sued under § 3730(h).

And finally, the *Moore* court reached its conclusion that the FCA permits suits against individual corporate employees in a single paragraph without any thorough analysis of the

FCA's text or the legislative history behind the 2009 Amendment. Thus, none of the plaintiff's cited authority is persuasive or controlling on the question of how to interpret § 3730(h).

In sum, the FCA, both before and after the 2009 Amendment, precludes individual liability for corporate employees, and therefore, plaintiff's FCA claims against defendants Easley, Greene, Pfundheller and Long fail as a matter of law and must be dismissed.

## B.

Next, defendants argue that plaintiff's § 1983 claim must be dismissed for a variety of reasons. At the outset, it is important to note that neither party recognized that § 1983 does not provide a cause of action against a federal official or contractor.[7] By its own terms, § 1983 only applies to state actors acting under color of state law, not federal actors acting under color of federal law. *See Hindman v. Healy*, 278 F. App'x 893, 895 (11th Cir. 2008) (citing *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973)). Because plaintiff's § 1983 claim is against a federal contractor who purportedly acted under color of federal law, this cause of action could be dismissed on this basis without further comment. Nor would an amendment to attempt to state a *Bivens* claim fare any better; such a claim would fail because a *Bivens* claim is only available when a federal actor violates a plaintiff's federal rights while acting under color of federal law.[8] *See Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006)). As the Supreme Court has noted, "merely

---

[7] *See, e.g., Williams v. United States*, 396 F.3d 412, 414–15 (D.C. Cir. 2005) (holding that a federal official making an arrest pursuant to state law cannot be sued under § 1983 because his authority to act comes from federal law, not state law); *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980), cert. denied, 450 U.S. 983 (1981) ("The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials."); *Smith v. Donahoe*, 917 F. Supp. 2d 562, 568 (E.D. Va.) ("Section 1983 applies only to state actors acting under the color of state law, not to federal actors." citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998); *Johnson v. United States*, 642 F. Supp. 2d 1, 4 (D.D.C. 2009) (same); *Bender v. Gen. Svcs. Admin.*, 539 F.Supp.2d 702, 707 (S.D.N.Y. 2008) (same); *Hightower v. United States*, 205 F.Supp.2d 146, 154 n. 4 (S.D.N.Y. 2002) (same).

[8] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971).

private conduct, no matter how discriminatory or wrongful," does not constitute state or federal action and is excluded from the reach of § 1983 and *Bivens*. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

In this case, plaintiff's claim – under either § 1983 or *Bivens* – is completely unconnected to the security services PAE and its employees provided to the State Department. In discharging the plaintiff, PAE did not act under color of federal law, but instead made a wholly private business decision.[9] None of the factual allegations in plaintiff's complaint permits an inference that the State Department or any other federal agency had influence over PAE's internal business decision to discharge the plaintiff so as to convert its wholly private act into state action. *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999) ("[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action.").

Here, PAE's decision, as a private employer, to discharge an employee, whether wrongful or retaliatory, is not an act under federal law simply because PAE has a contract with the federal government. Because PAE's decision to discharge the plaintiff is not fairly attributable to any state or federal action, plaintiff's claim – under either § 1983 or Bivens – fails as a matter of law against PAE and the individual defendants and must be dismissed.

---

[9] Moreover, the Supreme Court has clearly held that *Bivens* does not apply to federal agencies or private corporations serving as federal contractors. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself. We therefore hold that [plaintiff] had no *Bivens* cause of action for damage against [a federal agency]."); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) ("We decide here whether the implied damages action first recognized in *Bivens* [] should be extended to allow recovery against a private corporation operating a halfway house under contract with the Bureau of Prisons. We decline to so extend *Bivens*."). This precedent effectively forecloses any potential *Bivens* claim against PAE, a private corporation contracting with the federal government.

## C.

A threshold issue in considering plaintiff's breach of contract action is choice of law. Neither party presented a choice of law analysis in their briefs, and instead proceeded under the assumption that Virginia law applies.[10] The analysis here proceeds on the same assumption.

Plaintiff claims that on October 19, 2015, he reached an oral agreement with Easley as to the terms of his discharge from PAE. Specifically, he alleges:

- At the termination meeting on October 19, 2015, [Easley] offered [plaintiff] normal salary . . . and bonus through December 31, 2015 for a total of $85,615 to complete [plaintiff's] employment contract, plus PTO and benefits (life, medical insurance, ect.) and positive professional referrals. In return, [plaintiff] was to end his employment by close of business on October 20, 201[5]. (Doc. at ¶ 105.)

- [Easley] told [plaintiff] to accept the offer, stating that it would allow [plaintiff] a reasonable amount of time to find new employment. (*Id.* at ¶ 106.)

- [Plaintiff] repeated [Easley's] offer twice to make sure he fully understood what [Easly] was offering him. When [Easly] confirmed, [Plaintiff] accepted [Easley's] offer. (*Id.* at ¶ 107.)

- Contrary to the terms that [plaintiff] and [Easley] had agreed upon, the letter that PAE later sent [plaintiff] did not reflect the oral contract they had executed on October 19, 2015. In that letter, PAE offered him only $11,205. (*Id.* at ¶ 108.)

PAE asserts that these allegations are not evidence of an oral contract, but instead reflect only an unenforceable agreement to agree. *See Navar, Inc. v. Fed. Bus. Council*, 291 Va. 338, 346–47 (2016) ("An agreement to 'negotiate open issues in good faith' to reach a 'contractual objective within [an] agreed framework' will be construed as an agreement to agree rather than a valid contract.") (citation omitted).

---

[10] At the hearing held on March 17, 2017, the parties represented that they believed Virginia law governed pursuant to the choice-of-law provision in plaintiff's employment contract, a fact not alleged in the complaint and hence not relied on here.

Under Virginia law, the elements of a claim for breach of contract are: "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 449 (E.D. Va. 2009) (citing *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)). A contract is legally enforceable only when an offer is accepted and valuable consideration exchanged. *See Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp.*, 407 F. Supp. 2d 758, 761 (E.D. Va. 2005) (citing *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346, 269 S.E.2d 838 (1980)). To form a binding contract, there must be "mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002) (quoting *W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 254 Va. 514, 519, 493 S.E.2d 512, 515 (1997)). In Virginia, it is well settled that agreements to negotiate at some point in the future are unenforceable. *See Premier Signatures Int'l, Inc. v. Feld Entm't Prod., Inc.*, 1999 WL 427199 at *3 n. 4 (4th Cir. June 25, 1999). Mere "agreements to agree in the future" are "too vague and too indefinite to be enforced." *Beazer*, 235 F. Supp. 2d at 490 (citing *Schafer*, 254 Va. at 520).

Plaintiff has sufficiently stated a claim for breach of oral contract against PAE. PAE asserts that the October 19, 2015 discussion between Easley and the plaintiff was an unenforceable agreement to agree.[11] This argument is unavailing at the motion to dismiss stage, as the plaintiff's factual allegations must be accepted as true and all reasonable inferences must

---

[11] PAE places special emphasis on the fact that it presented plaintiff with a written termination agreement on October 20, 2015, and argues that this demonstrates that the oral discussion that occurred on October 19th was no more than an agreement to negotiate or pre-contract discussion. Further, PAE argues that the written offer it submitted on October 20, 2015, is evidence that it never intended to enter an oral contract on October 19, 2015. Plaintiff responds that the written agreement is evidence that PAE breached the oral contract. This factual dispute cannot be resolved on a motion to dismiss.

be granted in plaintiff's favor. Plaintiff alleges that Easley, on behalf of PAE, offered him definite terms including: rate of pay, allocation of benefits, termination date and references. Plaintiff claims to have accepted these sufficiently definite terms without equivocation. Plaintiff also alleges a breach of this agreement and resulting damages. Nothing more is required under Virginia law to state a claim for breach contract. Accordingly, plaintiff's breach of contract claim survives PAE's motion to dismiss.

Plaintiff's breach of contract claim against Easley, in his individual capacity, does not fare as well. There are no allegations of fact in plaintiff's complaint to support an inference that Easley intended to enter personally into a contract with plaintiff or to bind himself to personally paying plaintiff's negotiated termination benefits.[12] Plaintiff concedes as much in his brief in opposition to defendants' partial motion to dismiss. Nor has plaintiff forecasted any facts to show that Easley intended to be personally bound by any contract between PAE and the plaintiff. Accordingly, plaintiff's breach of contract claim against Easley must be dismissed.

### IV.

For the reasons set forth above, defendants' partial motion to dismiss is granted in part and denied in part.

An appropriate order will issue.

The Clerk of Court is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
April 11, 2017

/s/

T. S. Ellis, III
United States District Judge

---

[12] Indeed, under the circumstances alleged in the complaint, it would be highly unusual for Easley, as one of PAE's employees, to bind himself individually to a contract that settles a dispute between PAE and another employee.