**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JEFFRY IRVING,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.: 1:16-cv-1617** |
| **PAE GOVERNMENT SERVICES, INC.** | ) | |
| **Defendant.** | ) | |

**SUPPLEMENTAL REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant PAE Government Services, Inc., by counsel, files this Supplemental Reply after Plaintiff Jeffry Irving filed his Opposition to PAE's Motion for Summary Judgment four days late.[1]

Factually, Mr. Irving's Opposition appears to confuse quantity for quality and fails to dispute most of PAE's undisputed *material* facts, including those comprising PAE's numerous legitimate reasons for terminating Mr. Irving. Instead, Mr. Irving concedes most facts entirely while misrepresenting documents and introducing immaterial and irrelevant evidence, including wild accusations entirely unsupported by the record. Mr. Irving also ignores his own testimony, including where he admitted he never investigated *anything*, let alone investigated government fraud, where he characterized the purported "alcohol runs" as a "simple miscommunication," and where he admitted that PAE terminated him for numerous reasons completely unrelated to his alleged protected conduct. Put simply, Mr. Irving has not established any genuine dispute as to

[1] As PAE pointed out in its previous Reply, Mr. Irving's failure to timely oppose PAE's Motion concedes both facts and law. To the extent this Court permits Plaintiff's submission, PAE files this Supplemental Reply to provide a substantive response to Plaintiff's Opposition.

any material facts to withstand summary judgment.

Legally, Mr. Irving concedes several critical arguments raised in PAE's Motion by entirely failing to address them. For example, Mr. Irving failed to address the FCA's "but for" causation standard and PAE's argument, supported by the undisputed evidence, that it would have terminated Mr. Irving even if he had not allegedly engaged in protected activity. Mr. Irving also failed to address the issue of pretext and provided no evidence to support that necessary element of his FCA retaliation claim.

What Mr. Irving *does* argue is likewise unavailing. Mr. Irving does not dispute any of the underlying facts evidencing his deficient performance nor does he dispute the findings of HR's investigation into his conduct. Instead, while conceding PAE Human Resources promptly investigated concerns raised about him, he tries to deflect attention from the investigation's factual conclusions by accusing PAE, without any evidence, of conducting a biased investigation.

Mr. Irving also claims to have engaged in FCA protected conduct when he raised issues about allegedly noncompliant body armor and vehicles used to transport alcohol. Yet, as Mr. Irving himself testified, he couched his various complaints in terms of mere suggestions, not accusations of government fraud. Further, it is undisputed that Mr. Irving never investigated these issues and never alerted PAE to the onset of any FCA litigation. Without evidence to support these required elements of his FCA retaliation claim, it fails as a matter of law.

As to his breach of contract claim, in his Opposition, Mr. Irving wholly admits that he expected to receive a written agreement to sign in exchange for any alleged payment. This admission, regardless of what Mr. Irving claims to have been the terms negotiated at his termination meeting, means that the Parties never formed a contract at that meeting. Instead, they

had a textbook "agreement to agree," which is uniformly unenforceable.

Ultimately, Mr. Irving's Opposition fails to put forth any genuine issue of material fact and he, therefore, cannot possibly prove his claims. For these reasons, and all those discussed in PAE's Motion, PAE is entitled to summary judgment.

## ARGUMENT

### I. Plaintiff Concedes Numerous Dispositive Facts

Fatal to his claims, Mr. Irving does not dispute numerous dispositive facts. Many of PAE's undisputed facts are completely unaddressed, and thereby conceded. Mr. Irving's statement of facts merely contains additional, immaterial facts that do not actually dispute anything. Some contain blatant misrepresentations of the evidence. And many chiefly rely on Mr. Irving's testimony to dispute other, contradictory portions of the same testimony. The following material facts, therefore, remain undisputed: 8, 10-15, 18, 20-26, 28-48. *Compare* PAE's Undisputed Facts *to* Mr. Irving's Disputed Facts.

#### A. Plaintiff Does Not Dispute The Events Underlying His Poor Performance

Most importantly, Mr. Irving disputes *none* of the events underlying *any* of his disciplinary actions. *Compare* Def's Undisputed Facts *to* Disputed Facts at Nos. 30-42. In his Opposition, Plaintiff argues that the only proof that PAE offers in support of Plaintiff's poor performance is a single email from Mr. Easley to Plaintiff. This is simply not true. Plaintiff puts forth no facts disputing the record evidence that Mr. Easley and Ms. Pfundheller verbally counseled him on multiple occasions throughout 2015. Undisputed Facts at No. 30. He likewise cites no facts disputing the record evidence that Mr. Easley received numerous complaints from Mr. Irving's peers and subordinates or that Mr. Easley formally documented Mr. Irving's

performance issues. *Id.* at Nos. 31-32.[2] Mr. Irving does not even dispute that Mr. Hunter complained about him, which led PAE's HR department to investigate his conduct and recommend his termination. *Id.* at Nos. 38-42. Likewise, Mr. Irving cites to no evidence disputing any of the statements made against him by his peers and subordinates during HR's investigation. *See* Disputed Facts at No. 41. Finally, Mr. Irving does not dispute the HR investigator's findings and conclusions that Mr. Irving "created a divisive workplace lacking continuity," was disrespectful, and had a negative attitude, among other serious deficiencies. *See* Undisputed Facts at No. 41.

Instead, rather than eliciting testimony from the HR investigator or any of the individuals who substantiated Mr. Hunter's allegations, or even deposing Mr. Hunter himself, Mr. Irving baldly accuses PAE of conducting a biased investigation and soliciting complaints from his subordinates to "create a paper trail to fire him." There is zero evidence to support these bald accusations and they are wholly insufficient to defeat summary judgment. *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) ("[T]he non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial…Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment."). Indeed, Plaintiff makes these accusations only because "he ***believes*** the investigation…was biased in favor of PAE[,]" and *not* because of any admissible record evidence. *See* Opp. at Disputed Facts No. 41.

**B. <u>It Remains Undisputed That Plaintiff Did Not Engage In Protected Activity</u>**

Plaintiff's statement of facts fails to dispute the record evidence in numerous other ways.

[2] Plaintiff attempts to cast doubt on his poor performance by citing to his 2012-2014 performance reviews and merit bonuses from his previous position with PAE in the United States. *See* Opp. at Exs. 6-9. These items are immaterial and irrelevant because he received those while in his previous role, not in the role he held when PAE terminated him. *See* Opp. at p. 3 (Mr. Irving "competed for a new position within PAE…and was selected and hired out of a group of applicants.").

For example, as to Undisputed Fact 8, Mr. Irving does not dispute his repeated, unequivocal testimony that he never investigated *anything*, but instead summarily states that he "reasonably believed that fraud was occurring," a pure legal conclusion. As to Undisputed Fact 18, Mr. Irving cites to an email written by Mr. Easley purporting to show that PAE did not have any "compliant" body armor in its inventory, but that email actually says: "The fact remains, we do not have any [NIJ] *certified* armor in our inventory. I have no reason to believe we don't have legitimate equipment." *See* Opp. at Ex. 29 (emphasis added). Mr. Irving also misrepresents an email in response to Undisputed Fact 19, stating that PAE was required to provide "compliant" body armor on the Contract, which they allegedly did not do until the week of September 15, 2015. That email is actually between Mr. Irving and a representative of OGNA discussing *OGNA's* body armor, *not* PAE's. *See* Opp. at Ex. 30.[3]

As to Undisputed Fact 22, Mr. Irving "generally agrees" that Mr. Easley and Ms. Pfundheller "in no way supported" the transport of large quantities of alcohol and that Easley immediately shut any such "alcohol runs" down after Mr. Irving complained. Plaintiff also explicitly admits he did not investigate this issue at all. As to Undisputed Fact 23, Mr. Irving does not dispute his own testimony that it "didn't occur" to him that there was fraud afoot, that "nothing happened" with regard to the alcohol issue, and that he himself characterized the "alcohol runs" as a "simple miscommunication." Instead, Mr. Irving simply states that he complained generally about government fraud, another pure legal conclusion. Mr. Irving entirely fails to dispute Undisputed Fact 24, thereby conceding that Mr. Easley told him on at least two occasions to make Mr. Easley the "bad guy" if PAE personnel continued to blame Mr. Irving for

[3] The distinction between "certified" and "compliant" body armor is critical and Plaintiff attempts to confuse this issue. Plaintiff relies on Exs. 29 and 30, without citation to the Contract or the Statement of Work, for the proposition that PAE's body armor was not "compliant" with the Contract. These exhibits, however, undisputedly refer only to whether PAE's body armor was "certified" by the NIJ, *not* whether the armor was "compliant" with the Contract.

shutting down the "alcohol runs." By not disputing this fact, Mr. Irving also concedes that Mr. Easley further "addressed [his] concerns" about the "alcohol runs."

Although Mr. Irving also cites to emails between him and PAE's Ethics Department, he admits he has no personal knowledge of or evidence to support the claim that no further investigation took place. *See* Opp. at p. 19 (Stating—without citation—that "[t]o Mr. Irving's knowledge, Mr. Easley was not investigated by Ms. Bejarano or her ethics team[.]"). This is wholly insufficient to defeat summary judgment. *Hawthorne v. Larose*, 2013 U.S. Dist. LEXIS 112800 (E.D. Va. Aug. 9, 2013) (the non-moving party "may not rest upon…the appearance of some metaphysical doubt…but, instead, must set forth specific facts showing a genuine issue for trial.) (quotations omitted).[4] Moreover, Plaintiff claims he emailed PAE's Ethics Department out of a concern that Mr. Easley could not conduct an impartial investigation into the body-armor issue. *See* Opp. at p. 18-19 and Exs. 44-46. Importantly, while the undisputed evidence shows this is not true, despite the situation and his audience, at no point in his communications with PAE's Chief Ethics & Compliance Offer does Plaintiff mention fraud or illegality of any kind.

In the face of all of this, Mr. Irving cannot possibly establish FCA retaliation or breach of contract. Accordingly, PAE is entitled to summary judgment.

## II. Plaintiff Concedes PAE's "But For" and "Pretext" Arguments

Parties who fail to respond to arguments raised on summary judgment concede those arguments. *High Country Arts and Crafts Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 634-35 (4th Cir. 1997) (holding that when a "[d]efendant move[s] for summary judgment…and the]

[4] Mr. Irving also claims that PAE failed to investigate Mr. Hunter's performance and alleged substance abuse. *See* Opp. at p. 19-20. It is one thing to make such a claim without citation to record evidence, which Plaintiff does, but it is another thing entirely to do so despite the existence of readily available evidence directly contradicting it. Namely, after Mr. Irving accused Mr. Hunter of using drugs, Mr. Easley ordered that Mr. Hunter submit to a drug test. *See* Easley Dep. at 126:14-127:4 and Drug Testing Email, attached hereto as Exhibit 1.

[p]laintiff [does] not address [the] issue[s] in its opposition to the motion for summary judgment...judgment dismissing [the] cause of action is appropriate." (citation omitted).

In his Opposition, Mr. Irving does not oppose – and, therefore, concedes – the following arguments:

- PAE did not terminate Mr. Irving "because of" any alleged protected activity, i.e., that Mr. Irving's various complaints were the "but for" cause of his termination (Def.'s Mem. at Argument § A.1); and

- It is undisputed that PAE had legitimate, non-pretextual reasons for terminating Mr. Irving (Def. Mem. at Argument § A.2).

These conceded arguments are fatal to two of the necessary elements of Mr. Irving's FCA retaliation claim. Thus, Mr. Irving cannot possibly establish the essential elements of that claim – an absolute requirement to survive a motion for summary judgment. *Contract Assocs. v. Atalay*, 2015 U.S. Dist. LEXIS 48129, *5-6 (E.D. Va. Apr. 10, 2015) ("In making a summary judgment determination, the Court must bear in mind that "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Accordingly, PAE is entitled to summary judgment on Mr. Irving's FCA retaliation claim.

## III. <u>PAE Is Entitled To Summary Judgment On Plaintiff's FCA Retaliation Claim</u>.

### A. <u>There Is No Evidence Of Causation</u>

By not addressing it, Mr. Irving concedes that the "but for" causation standard applies to his FCA retaliation claim. *Gross v. FBL Fin. Servs.,* 557 U.S. 167, 168 (U.S. 2009) (holding that the ordinary meaning of the term "because of" requires that a plaintiff establish "but for" causation in retaliation actions); 31 U.S.C. § 3730(h) ("Any employee…shall be entitled to all relief necessary…if that employee…is discharged…*because of* lawful acts done by the

employee…in furtherance of an action under this section.") (emphasis added); *Salagh v. Va. Int'l Univ.*, 2017 U.S. Dist. LEXIS 35808, *16-17 (E.D. Va. Mar. 13, 2017) ("Plaintiff would still fail to satisfy the third required element of *but-for causation* between her demotion and the protected activity.") (emphasis added).

In his Opposition, even in his silence on the legal argument, Mr. Irving also failed to produce any admissible evidence that his alleged protected conduct was the "but for" cause of his termination. Instead, Mr. Irving chiefly relies on flawed declarations from two of his former subordinates, Mr. Reynolds and Ms. Trostle, and Mr. Reilly, the Contract's COR, where each states that they merely *believe* PAE fired Mr. Irving due to his complaints about the body armor and/or the misuse of government vehicles. *See* Opp. at Exs. 14, 17, and 18. Indeed, as Mr. Irving says in his Opposition, "the commonly held *belief* was that Mr. Irving was not fired due to Mr. Hunter's complaint, but was instead fired due to complaining about the PAE supplied body armor and/or PAE's misuse of GFE." Opp. at p. 5.

Water cooler talk cannot create a genuine issue of material fact sufficient to survive summary judgment. *Rahrig v. Alcatel USA Marketing, Inc.*, 217 Fed. Appx. 189, 193 (4th Cir. 2006) (noting that testimony based on "office rumors" was "inadmissible hearsay and was properly not considered material evidence to deny [defendant's] motion for summary judgment") (citing *Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) ("proffered evidence of un-attributed rumors is inadmissible hearsay. Such evidence is neither admissible at trial nor supportive of an opposition to a motion for summary judgment"). *See also See Cottom v. Town of Seven Devils,* 30 Fed. Appx. 230, 234 (4th Cir. 2002) (statements based solely on information and belief do not satisfy the requirements of Rule 56).

Plaintiff wrongly relies on the declarations in his Opposition for numerous other reasons.

First, Ms. Trostle and Mr. Reilly cannot possibly have any personal knowledge concerning Mr. Irving's termination. Ms. Trostle states in her declaration that she resigned from PAE on July 7, 2015–more than three months *prior* to Mr. Irving's termination. *See* Opp. at Ex. 18. Mr. Reilly similarly declares that he "left Afghanistan" in September 2015, at least one month before Mr. Irving's termination. *See* Opp. at 14.

Second, Mr. Reilly's declaration appears to violate State Department regulations. These regulations, generally called *Touhy* regulations, govern "whether, and under what circumstances, documentary and testimonial information from the agency may be released in official proceedings." *Donatoni v. Dep't of Homeland Sec.*, 184 F. Supp. 3d 285, 287 (E.D. Va. 2016) (Ellis, T.S., III). *Touhy* regulations "prohibit employees from providing documentary or testimonial information obtained in the performance of official duties unless the [agency] authorizes the disclosure." *Id.* The State Department has promulgated formal *Touhy* regulations prohibiting its current and former employees from providing testimony unless approved by the State Department. 22 C.F.R. § 172.4(a). The regulations also state that "Department employees shall not provide opinion or expert testimony based upon information which they acquired in the scope and performance of their official Department duties[.]" 22 C.F.R. § 172.9.

Mr. Reilly is a former State Department employee whose declaration contains information acquired as part of his official duties as the COR on PAE's Contract. *See generally* Opp. at Ex. 14. Although Plaintiff makes no showing that he obtained State Department approval to secure Mr. Reilly's testimony, even if he received approval, the State Department would not have permitted Mr. Reilly to provide a declaration so rife with opinion testimony. *See id.* at ¶¶ 5, 6, 8, 11, 12, 16, 18, and 23. This strongly suggests, regardless of its content, that Plaintiff never

sought, let alone obtained, State Department approval for Mr. Reilly's declaration. Absent a showing from Mr. Irving to the contrary, this Court should disregard Mr. Reilly's declaration as inadmissible and improperly obtained in violation of State Department regulations. For these reasons, it also cannot be used to defeat summary judgment. *See Greensboro,* 64 F.3d at 967 ("evidence that is inadmissible at trial is not admissible for summary judgment").

Third, the absence of any temporal proximity between Mr. Irving's complaints and his termination also cuts strongly against causation. Mr. Reynolds, Ms. Trostle, and Mr. Reilly each state in their declarations that they "believe" PAE terminated Mr. Irving for complaints made in April or May of 2015. *See* Opp. at Exs. 17 and 18. It is undisputed that PAE terminated Mr. Irving in October of 2015–either 5 or 6 months *after* he complained. It is likewise undisputed that Mr. Easley only joined the Contract and became Mr. Irving's supervisor in May of 2015, *after* Mr. Irving claims he may have first raised any issues. Regardless, the Fourth Circuit has held that "[t]he temporal nexus between two events cannot provide proof of causation unless the temporal proximity between an employer's knowledge of protected activity and an adverse employment action was very close." *Pettis v. Nottoway Cnty Sch. Bd.,* 592 Fed. Appx. 158 (4th Cir. 2014). Even a gap of two months between protected activity and an adverse action is "sufficiently long as to weaken significantly the inference of causation between the two events." *King v. Rumsfeld,* 328 F.3d 145, 151, n. 5 (4th Cir. 2003).

Further, even if Mr. Irving argues that the temporal proximity is closer than these declarants claim, Mr. Hunter's Complaint about Mr. Irving, which spurred a month long investigation and resulted in a termination recommendation, constitutes an "intervening event" that severs any possible causal connection. *Feldman v. Law Enforcement Assocs. Corp.,* 752 F.3d 339, 348 (4th Cir. 2014) (holding that "the causal connection may be severed by the

passage of a significant amount of time, or by some legitimate intervening event.") (citations, quotations, and alterations omitted).

Fourth, Mr. Irving argues that Mr. Reilly, as stated in his declaration, did not consider the body armor test to constitute destruction of government property, "so neither does Mr. Irving." *See* Disputed Facts at 21. It is, however, undisputed that PAE, Mr. Easley, and Ms. Pfundheller believed the test to be destruction of government property and a terminable offense. Undisputed Facts at 21. As is well settled, it is the perception of the decision maker, not the employee, that matters. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."). For this same reason, it is also irrelevant whether Mr. Reilly authorized or later approved the body armor testing because it is undisputed that PAE personnel were not aware of nor did they ever approve it.

More generally, Mr. Irving also failed to dispute any of the testimony or documents concerning the actions Mr. Easley took in response to Mr. Irving's alleged protected activity, including that Mr. Easley flew from Arlington, Virginia, to Kabul, Afghanistan to investigate the body armor testing issue and, that even though PAE reasonably believed he destroyed government property in violation of company policy, Mr. Easley recognized Mr. Irving's intent as "positive and focused on employee safety, which [was] a strong mitigating factor" in Easley's discipline. Mr. Irving also "generally agrees" that Mr. Easley not only "shot down" the alleged "alcohol runs," he also instructed Mr. Irving to "push the blame" to him when PAE staff were personally blaming Mr. Irving for stopping the "alcohol runs." Given Mr. Easley's undisputed reactions to Plaintiff's complaints, no reasonable juror could find "but for" causation here. *Nifong v. SOC, LLC*, 234 F. Supp. 3d 739 (E.D. Va. Feb. 13, 2017)) (Ellis, T.S., III) (finding no

causation when a supervisor commended an employee for bringing an issue to his attention).

Likewise fatal to his retaliation claim, Mr. Irving himself testified that he believed PAE terminated him for many reasons having nothing to do with his alleged protected activity. In his Opposition, Mr. Irving admits this yet again – Mr. Irving "*believed* that he was terminated for complaining of fraud on the government; but *that [it] was possible that other factors might have come into play*." *See* Disputed Facts at No. 48. These admissions destroy any possible inference of "but for" causation. *Kirkland v. Mabus*, 206 F. Supp. 3d 1073, 1084 (E.D. Va. 2016) (In retaliation cases, a plaintiff "must show that the causal link between her protected activity and her removal is so close that the removal would not have occurred but for the protected activity.") (citing *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). Mr. Irving's attempts to rebut his own testimony in this regard with other, conflicting portions of his testimony are unavailing. *S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 274 (4th Cir. 1998).

Accordingly, for these reasons, Defendant is entitled to summary judgment on Mr. Irving's False Claims Act retaliation claim.

**B. <u>Plaintiff Did Not Engage In Protected Activity Under The FCA</u>**

In order to constitute protected activity, an employee's investigation into or opposition to fraud must "take[] place in a context where…the conduct could reasonably lead to a viable FCA action, or when…litigation is a reasonable possibility[.]" *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 344 (4th Cir. 2010). When an employee, never "initiated, testified for, or assisted in the filing of a [False Claims Act] action during his employment," but instead "merely informed a supervisor of [a potential overcharging] problem and sought confirmation that a correction was made," that employee has not acted "in furtherance" of an FCA action. *Nifong*, F. Supp. 3d 739 (quotations omitted).

In his Opposition, Mr. Irving does not—and cannot—rebut his own unequivocal testimony that he never investigated *anything*, let alone investigated government fraud. Moreover, there is simply no evidence that Mr. Irving ever "initiated, testified for, or assisted in the filing of" an FCA action during his employment. In fact, while Mr. Irving now relies heavily on Mr. Reilly's improperly obtained and inadmissible declaration, which purports to confirm that what Mr. Irving complained about was fraud, Mr. Reilly pointedly does not state that Mr. Irving's complaints led to any investigation by the government into PAE. There is likewise no evidence in the record suggesting the government ever looked into, let alone prosecuted, PAE for anything Mr. Irving complained about. Indeed, if what Mr. Irving complained about was actually fraud, there is almost no chance that the government would have, as Mr. Reilly confirms, reimbursed PAE for the purchase of replacement vests. *See* Opp. at Ex. 14. Further, regardless of what Mr. Reilly states, Plaintiff cannot dispute his unequivocal testimony, as well as his admission in his Opposition, that he never investigated the alcohol issue and, instead, described it is a "simple miscommunication." *Compare* Disputed Facts 22 to Undisputed Facts 22.

Mr. Irving also does not–and cannot–dispute his own testimony that he couched his complaints in terms of mere suggestions, not threats or warnings of FCA violations. For example, as to the time reporting issue, Mr. Irving testified that he "couched it that way…[t]hat, hey, you know, if this is a problem, I want to know somebody, one, knows about it at your level and, two you're doing something about because this is – this is a big deal." Undisputed Facts at 29. This is not enough to constitute protected activity under the FCA. *United States ex rel. Parks v. Alpharma,* Inc., 493 F. App'x 380, 389-90 (4th Cir. 2012) (no protected activity when the complaints, exactly like Mr. Irving's here, "were clearly couched in terms of concerns and suggestions, not threats or warnings of FCA litigation."); *see also Eberhardt v. Integrated*

*Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999) (actions putting an employer on notice "would include, but are not limited to, characterizing the employer's conduct as illegal or fraudulent or recommending that legal counsel become involved").

Accordingly, for these reasons too, Defendant is entitled to summary judgment on Mr. Irving's FCA retaliation claim.

## IV. PAE is Entitled To Summary Judgment On Plaintiff's Breach Of Contract Claim

Mr. Irving's breach of contract claim is open and shut. Plaintiff admitted in his deposition that he did not know what PAE expected to receive in exchange for whatever payment it allegedly promised him. Undisputed Facts at No. 44. This admission is fatal to his breach of contract claim because contracts require consideration, reasonably certain terms and conditions, and mutuality of obligation in order to be enforceable. *Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364 (1981) ("[T]here must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract…A court should not determine the terms of the settlement upon which the parties ***might*** ultimately agree.") (emphasis added).

In his Opposition, Plaintiff now attempts avoid his fatal admission by abandoning and contradicting his own testimony by saying, without citation to any record evidence, he expected to receive a payment in exchange for signing a "general release." Disputed Facts at 44. This argument too, even if supported by evidence, would doom Plaintiff's breach of contract claim because any "general release" would have necessarily contained additional, material terms, including a release of all of Plaintiff's potential claims against PAE. Without the "general release" itself, therefore, there could not have possibly been an enforceable contract. *Progressive Constr. Co. v. Thumm*, 209 Va. 24, 30-31 (1968) ("[A]n agreement must be definite and certain

as to its terms and requirements; it must identify the subject matter and spell out the essential commitments and agreements with respect thereto.").

In his Opposition, Mr. Irving also argues that he and PAE entered into a binding oral contract during his termination meeting. At the same time, Mr. Irving concedes that he expected to later receive a written general release to sign in exchange for any alleged payment PAE offered. *See* Disputed Facts at Nos. 44 ("Mr. Irving knew that he would be expected to sign a General Release in return for receiving the payment.") and 45 (Mr. Irving "believed the document he would receive from PAE would merely memorialize the verbal agreement that they had made on October 19, 2015[.]").

That Mr. Irving believes the written agreement differed from the terms allegedly negotiated the day before is irrelevant. Instead, the case law is crystal clear – "[W]here the evidence is that the parties merely agreed to make an agreement in the future, and where a determination of the terms and conditions under which the obligation would be assumed are vague and uncertain, Virginia law treats such agreements as unenforceable agreements to agree." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 752 (4th Cir. 2016) (quotations omitted). PAE and Mr. Irving never had an enforceable contract.

Accordingly, Defendant is entitled to summary judgment on Mr. Irving's breach of contract claim.

## CONCLUSION

Based on the foregoing, as well as the arguments raised in its Motion for Summary Judgment, Defendant is entitled to summary judgment.

Respectfully submitted,

Date: October 2, 2017 By: __*/s/ Matthew F. Nieman*_____________________

Matthew F. Nieman (Virginia Bar No. 47231)
Jeremy S. Schneider (Virginia Bar No. 84419)
JACKSON LEWIS P.C.
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
(703) 483-8300 (Telephone)
(703) 483-8301 (Fax)
NiemanM@jacksonlewis.com
Jeremy.Schneider@jacksonlewis.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 2, 2017, a true and correct copy of the foregoing was filed using the Court's ECF system, which will serve all counsel of record automatically.

*/s/ Matthew F. Nieman*
Matthew F. Nieman

4844-0345-5313, v. 5